IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **LONNIE B.,** | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:21-CV-265 |
| | ) |
| **v.** | ) |
| | ) |
| **KILOLO KIJAKAZI, Acting Commissioner** | ) |
| **Social Security,** | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| **Defendant** | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on June 21, 2022, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Lonnie B. (Lonnie) has filed objections to the R&R and this matter is now ripe for the court's consideration. As discussed more fully below, the court **SUSTAINS** one of Lonnie's objections and **REMANDS** this case for further development.

### I. Background

Lonnie filed applications for supplemental security income and disability insurance benefits on February 15, 2018, alleging disability beginning December 31, 2018. For purposes

of disability insurance benefits, Lonnie had sufficient quarters of coverage to remain insured through September 30, 2020.

Lonnie was 44 years old on the alleged disability date. He claims disability based on diabetes mellitus which resulted in a below-the-knee amputation of his right leg in February 2019. The administrative law judge (ALJ) found that those impairments were severe, but that none of the impairments met or medically equaled a listed impairment. The ALJ further found that Lonnie had the residual functional capacity (RFC) to perform light work[1] except that he could never operate foot controls with his right lower extremity, could frequently stoop, occasionally climb ramps and stairs, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds. The ALJ found Lonnie should avoid concentrated exposure to wetness and humidity and avoid exposure to vibrations and industrial hazards. Based on the testimony of a vocational expert, the ALJ concluded that Lonnie could do work such as that of a router, marker, or housekeeping cleaner, all of which are classified as light work and exist in significant numbers in the national economy. Therefore, the ALJ determined that Lonnie was not disabled. R. 19-31. The Appeals Council denied Lonnie's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a person] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Lonnie has objected to two of the magistrate judge's findings.

## II. Legal Standards

### A. Objections to Magistrate Judge's Report and Recommendation

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[2] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987

---

[2] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011) (per curiam). See also Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions' of the report or specified proposed findings or recommendations to which objection is made.'") Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

In the absence of a specific, proper, and timely filed objection, a court reviews an R&R only for "clear error" and need not give any explanation for adopting the R&R. Carr v. Comm'r of Soc. Sec., No. 3:20-cv-00425-FDW-DSC, 2022 WL 987336, at *2 (W.D.N.C. Mar. 31, 2022) (citing Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) and Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983)). See also Laurie D. v. Saul, No. 1:20-cv-831 (RDB/TCB), 2022 WL 1093265, at *1 (E.D. Va. Apr. 11, 2022) (quoting Lee v. Saul, No. 2:18-cv-214, 2019 WL 3557876, at *1 (E.D. Va. Aug. 5, 2019) ("In the event a plaintiff's 'objections' merely restate her prior arguments, the Court 'need only review the Report and Recommendation using a 'clear error' standard.'")

## B. Standard of Review of Commissioner's Decision

Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## III. Discussion

Lonnie objects to the following findings by the magistrate judge: (1) Substantial evidence supports the finding by the magistrate judge that the ALJ included the required function-by-function or narrative discussion when making the residual functional capacity

5

(RFC) assessment and (2) The ALJ properly considered Lonnie's subjective allegations. The court will address the second objection first.

When evaluating a claimant's reported symptoms, the ALJ first considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms. Once an underlying physical or mental impairment is established, the ALJ evaluates the intensity and persistence of symptoms to determine the extent to which the symptoms limit a claimant's ability to perform work-related activities. Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). In making the second determination, the ALJ first looks at the objective medical evidence. Id. at *5. If the ALJ cannot make a disability determination that is fully favorable based on objective medical evidence, other evidence, such as statements from the claimant, medical sources, and other sources are considered. Id. at *6.

However, statements about symptoms alone will not establish disability. 20 C.F.R. § 404.1529(a).

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

Id.

In Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 95 (4th Cir. 2020), the Fourth Circuit reiterated that "'while there must be objective medical evidence of some condition that

6

could reasonably produce the pain there need not be objective evidence of the pain itself or its intensity.'" Id. at 95 (citing Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hines v. Barnhart, 453 F.3d 559, 564-65 (4th Cir. 2006)). The plaintiff in Arakas alleged disability in part based on her diagnosis of fibromyalgia, "a disease whose 'symptoms are entirely subjective,' with the exception of trigger point evidence." Id. at 96 (quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)).

The Arakas court held that it is error for an ALJ to discount a plaintiff's subjective complaints of pain and fatigue based largely on the lack of objective medical evidence substantiating her statements. Id. The ALJ relied principally on findings of a full range of motion and lack of joint inflammation to discount Arakas' subjective complaints as being inconsistent with the objective evidence, but in doing so he applied an incorrect legal standard. Id. The error was "particularly pronounced" in a case involving fibromyalgia, a disease whose symptoms are entirely subjective. Id. However, even in cases where an impairment is confirmed by objective medical findings, an ALJ may not discount subjective evidence of pain solely on a lack of objective evidence of pain intensity. Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017).

At the hearing in front of the ALJ, Lonnie testified that he had trouble using his prosthetic leg because sores developed on his stump. He said he cannot wear the prosthetic leg continuously. Depending on weather and climate, he could wear it for as long as two hours at a time, but in warm, hot, or humid conditions he could only wear it for about half an hour before needing to take it off to let his skin dry. He also must let the sleeve that fits over his stump dry out. R. 41-44. Lonnie testified that he can walk for ten to fifteen minutes with the

prosthetic before needing to take it off to let his stump and sleeve dry out. R. 45-46. He said

that the staff at the prosthetics office gave him a sock to go underneath the liner and that it

helped some to prevent sores, but he still gets them if he wears the prosthetic for an extended

time. He added that the staff at the prosthetics office also has told him to reduce the amount

of time he wears the prosthetic leg to reduce the chances of getting sores and ulcers on the

stump. R. 47. When the prosthesis is off, he needs to use his wheelchair to get around. Also,

when he is sitting, he has cramps and muscle spasms in his leg, hip, and back. He lies down

during the day to relieve the cramping. R. 44-45.

Lonnie also testified that he usually carries either a walking stick or a cane to help

support himself. He can sometimes walk without a cane but becomes unstable and needs an

assistive device. R. 46. When asked about household chores, Lonnie said that he does "some

but very limited." R. 48. He said that he helps cook and load the dishwasher "usually from my

wheelchair since everything is pretty much there where I can – you know, I don't have to just

like stand. I can do that; I can load the dishwasher and different things here." Id.

The ALJ asked Lonnie if he had driven for Uber after his amputation and Lonnie

testified that he had not driven for Uber since before the amputation and that he had records

on his Uber app to verify the last time he worked. R. 51. In response to a question about

whether he did yard work, Lonnie said:

> I do go out and walk when I can; if not, I'll use my wheelchair out in the yard
> and try to do some things to help around the house. And I'll – but mainly having
> – I do some. I try to help out because if not I'm going to feel completely helpless
> but I try to contribute where I can.

R. 51-52.

The ALJ asked Lonnie if he went shopping and he responded:

> I do. Right now, I live with a friend, we'll go to the grocery store. I use an electric cart and I help – help with the shopping. I help pick things up. She'll go and get things in the regular buggy and I'll go and get things in the electric cart, sir.

R. 52.

In his determination, the ALJ summarized Lonnie's testimony as having reported that he had some complications, including sores, cramping, and muscle spasms and that he had a prosthetic and used a wheelchair when necessary. R. 21. The ALJ also said that Lonnie testified that he helped around the house as much as possible and indicated that he lived with a friend and helped with shopping as needed. The ALJ added that as part of Lonnie's function report, he reported that he could prepare sandwiches and frozen dinners, perform simple household chores, and shop. R. 21.

The ALJ concluded that Lonnie's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record and further found that the RFC of light work with additional restrictions accommodated the limitations that were consistent with the record. Lonnie asserts that the magistrate judge erred in concluding that the ALJ adequately supported his finding that Lonnie's subjective allegations were not entirely consistent with the other evidence in the record.

The court agrees with Lonnie that the ALJ did not adequately evaluate his subjective allegations regarding the difficulties he had wearing the prosthetic leg for extended periods of time. The ALJ did not discuss Lonnie's testimony that he has to take the prosthetic leg off after thirty minutes to two hours of wearing it to let his stump dry out to prevent sores. The ALJ did discuss the evidence in the record showing that after initially starting to wear the

prosthetic, Lonnie began to complain of rubbing and pressure on his knee which ultimately led to a bursa sac.[3] R. 1161. In October 2019, his doctor recommended that he stop using the prosthetic leg and stop putting pressure on the area to give the bursa sac a chance to resolve. R. 1162. In a subsequent visit, the bursa sac had resolved. R. 1201. In November 2019, Lonnie also needed to have the socket on his prosthetic leg refitted because it had become too large. R. 1193. The socket was replaced in January 2020 and Lonnie reported that it felt snug and comfortable. R. 1215. The ALJ cited to the prosthetic adjustments as having alleviated the pain related to the bursa sac. R. 23. While the record does reflect that finding, it does not change the fact that the ALJ did not discuss Lonnie's testimony at the hearing that he can only wear the prosthetic leg from thirty minutes to two hours at a time because it sweats and causes sores. This complaint appears to be unrelated to the bursa sac.

Nor did the ALJ discuss Lonnie's testimony that his gait becomes unstable after a period of walking which prompts him to use an assistive device for stability. The record shows that in July 2019, around the same time Lonnie was dismissed from physical therapy, his treating physician commented that he watched Lonnie walk in the clinic and he did "pretty well," but when he stopped and changed direction, he was a "little wobbly." The doctor said he reviewed with Lonnie the importance of using a cane and discharged him from the clinic with a walker for safety. R. 1173.

If Lonnie has to remove the prosthetic leg multiple times a day to avoid developing sores, or if he needs a cane or walker for safety, it could affect his ability to do light work,

---

[3] Bursae are small fluid-filled sacs that reduce friction between moving parts in your body's joints. Knee bursitis is inflammation of one or more of the bursae in the knee. https://www.mayoclinic.org/diseases-conditions/knee-bursitis/symptoms-causes/syc-20355501 (last viewed Aug. 22, 2022).

which can require "a good deal of walking or standing." 20 C.F.R. § 404.1567. Without a discussion of these portions of Lonnie's testimony, the court cannot evaluate whether the ALJ's determination that Lonnie can do light work is supported by substantial evidence.

The ALJ also misstated Lonnie's testimony and statements in some instances. The ALJ found that Lonnie testified at the hearing and stated in his function report that he was able to perform his own daily activities, including shopping, cleaning, and yardwork. R. 23. However, as set forth above, Lonnie testified that he goes grocery shopping with a roommate and uses an electric cart to get around. In his function report he stated that he could sweep, mop, vacuum, and do dishes, which he did twice a week for about two hours at a time, with frequent breaks. R. 280. At the hearing, he testified that he only did some cooking and loading of the dishwasher from his wheelchair. R. 48. In the function report he said that he could not do yard work as it was dangerous because of his instability R. 281. At the hearing, he stated that he walked outside when he could and tried to do "some things" in the yard from his wheelchair to try to be helpful to his roommate, but he did not describe what kind of tasks he was able to do. R. 51-52. The ALJ's finding that Lonnie shopped, cleaned house, and did yardwork is an overstatement of his testimony and statements and therefore does not amount to substantial evidence on which to base a conclusion that he can do light work.

The ALJ also discounted Lonnie's subjective allegations because there was "some evidence" that he worked as an Uber driver after his amputation. R. 23. That evidence comes from a report by the prosthetic provider that Lonnie's current employment was that of an Uber driver. R. 1193. However, the same form states that Lonnie was currently unemployed and desired to return to work part time at a new job. Id. At the hearing, Lonnie testified that

11

he had not worked as an Uber driver since before his amputation. R. 51. Nor does his earnings record indicate that he had income from Uber in 2019. R. 216. Accordingly, to the extent the ALJ relied on Lonnie's work as an Uber driver to find his subjective allegations were inconsistent with other evidence in the record, it was error for him to do so.

While it is the duty of the ALJ and not the court to weigh the evidence in the record, the court cannot determine whether substantial evidence supports the ALJ decision unless the ALJ discusses which evidence he found credible and why and applies pertinent legal requirements to the evidence. Bittle v. Kijakazi, No. 2:20-cv-03019-SAL-MGB, 2021 WL 58120131 at *9 (D.S.C. Nov. 22, 2012) (citations omitted). Also, courts are directed to accept credibility determinations by an ALJ absent "exceptional circumstances" such as where a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (per curiam); Eldeco, Inc. v. N.L.R.B., 132 F.3d 1997).

In this case, how long Lonnie can walk and stand in an eight-hour workday is key to determining whether he can do light work. The ALJ overstated Lonnie's daily activities and failed to address his allegations about not being able to wear the prosthetic leg all day and needing an assistive device to walk because he becomes unstable. Therefore, the court cannot determine whether the ALJ's assessment is supported by substantial evidence. "'Remand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio v. Colvin, 780 F.3d 682, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). The court

finds that remand is appropriate here because the court cannot meaningfully review the ALJ decision to disregard Lonnie's subjective allegations. Accordingly, Lonnie's objection to the magistrate judge's finding that the ALJ properly assessed his subjective allegations is **SUSTAINED** and this case is **REMANDED** for further development. Because the court sustains this objection and remands the case, it does not address Lonnie's argument that the ALJ did not perform a proper function-by-function analysis when assessing his RFC.

### IV. Conclusion

For the reasons stated, the court **SUSTAINS** Plaintiff's second objection to the Report and Recommendation, **GRANTS** in part his motion for summary judgment, and **REMANDS** this case to the Commissioner for further proceedings consistent with this opinion.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: August 29, 2022

Michael F. Urbanski
Chief United States District Judge